[S. F. No. 2737.   In Bank.—January 29, 1904.]

# TERESA BELL, Appellant, v. LUCIUS L. SOLOMONS, Respondent.

TRUST—ACTION TO COMPEL CONVEYANCE—SECURITY FOR INDEBTEDNESS —PARTIAL INTEREST OF PLAINTIFF—ERRONEOUS DISMISSAL.—In an action to compel a conveyance from a trustee who purchased real estate at a sheriff's sale, in his own name, with money alleged to belong to plaintiff, and to have been paid by her agent, but which the court found to have been paid in part from plaintiff's money and in part from money belonging to her alleged agent personally, and further found that the deed was taken by defendant as security for a note of the plaintiff to the defendant, and another note from plaintiff's alleged agent to the defendant, and for cash advanced at the sale, it was error for the court upon such findings to dismiss the action without any relief to the plaintiff, though without prejudice to a subsequent action.

ID.—RIGHT OF PLAINTIFF TO REDEEM AND RECEIVE CONVEYANCE—RIGHTS OF ALLEGED AGENT NOT A PARTY—DEFENDANT NOT CONCERNED.— The plaintiff is entitled to redeem the entire property and receive from defendant a conveyance to her of the property.   The defendant not having made plaintiff's alleged agent a party, and she not having concerned herself to become a party to the action, the defendant is not interested in any controversy that may arise between plaintiff and such third party with respect to the ownership of the money received by him, nor in their respective rights to the land as against each other, in case of redemption by either. He is only entitled to hold the property conveyed to him until all the money secured thereby is paid.

ID.—LITIGATION BETWEEN PLAINTIFF AND ALLEGED AGENT—FINDINGS NOT CONCLUSIVE.—The findings of the court in this action, that the money with which the defendant purchased the property was partly the money of the plaintiff and partly that of her agent personally, and upon other matters in issue, will not be binding upon the plaintiff in any litigation between her and her alleged agent concerning their interests in the property or in the money advanced to purchase it.

ID.—COSTS—ABSENCE OF TENDER.—Where the plaintiff made no tender of payment of the sums due to the defendant for which he holds the legal title as security, the costs of the action and of the appeal must be paid as a condition of the relief indicated.

ID.—OFFSET—RENTS RECEIVED BY DEFENDANT.—It is not intended to decide that the plaintiff, if she redeem the property, is not entitled

to a credit for any rents which the defendant may have received during the time he has been in possession, as an offset to the amount due upon the redemption.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

T. Z. Blakeman, for Appellant.

Edmund Tauszky, and Wallace A. Wise, for Appellant.

SHAW, J.—This is an appeal by the plaintiff from a judgment and from an order denying her motion for a new trial. We have examined the record with reference to the points urged in support of the appeal from the order denying her motion for a new trial and have concluded that the evidence, though not satisfactory, is sufficient to support the findings, and that no error is presented thereby which is material to the relief to which we think the plaintiff is entitled, and therefore the points urged upon that appeal need not be further considered.

The complaint alleges, in substance, that one Mary E. Pleasant, as the agent of the plaintiff, intrusted the defendant with a large sum of money belonging to the plaintiff; that with this money the defendant purchased a certain tract of land, described in the complaint, at sheriff's sale, in his own name, and took a certificate and, subsequently, a sheriff's deed therefor, conveying title to him; that he paid no money at the sheriff's sale other than money so intrusted to him by the plaintiff, except the sum of fifty dollars, which he advanced out of his own funds as part of the costs of the sale; that the defendant still holds the property in his own name, but, in fact, as trustee for the plaintiff, and that prior to the beginning of the action she tendered him the fifty dollars paid by him out of his own funds at the sheriff's sale, and demanded a conveyance of the property by him to her. The prayer is for a decree compelling the defendant to convey the property to the plaintiff upon the payment of the fifty dollars in question, and for such other and further relief as

she may be entitled to in the premises. The answer denied
many of the allegations of the complaint, and set up affirma-
tively that the defendant held the land as security for certain
debts existing in his favor against the said M. E. Pleas-
ant and the plaintiff respectively. The court found that the
defendant purchased the land with money furnished to him
for that purpose by Mary E. Pleasant, except the sum of
fifty dollars which he paid out of his own funds; that Mary
E. Pleasant at the times in question was to a considerable
degree managing and conducting the affairs of the plaintiff
and handling money belonging to her; that the sum so fur-
nished amounted to eleven thousand dollars, of which five
thousand one hundred dollars belonged to the plaintiff and
five thousand nine hundred dollars to Mary E. Pleasant; that
defendant did not know that any of the money belonged to
plaintiff; that it was agreed between plaintiff and Mary E.
Pleasant at the time he purchased the property at the sheriff's
sale that he would hold the same in trust, and that, if a re-
demption was made, the redemption money should be applied
toward the payment of certain notes held by him against the
plaintiff and Mary E. Pleasant, respectively. If there was
no redemption, then he should procure a deed for the prop-
erty in his own name and dispose of the same and apply the
proceeds toward the payment of the notes. Other facts and
details were put in issue and found by the court, but they
are not material to the point to be decided. Upon the facts
admitted and found a decree was made, declaring the plain-
tiff not entitled to any relief against the defendant, but that
the judgment should be without prejudice to any subsequent
action by her to establish her rights in the premises after
payment to the defendant of the several amounts to him due
on the notes and fifty dollars advanced by him out of his
own funds.

We think the court should not thus summarily have dis-
missed the plaintiff from its forum without any relief. The
defendant does not claim to hold the absolute title to the
property. All that he claims, and all that the court finds, in
substance, is, that he holds the land in trust to secure the
payment of a promissory note executed to him by the plain-
tiff on March 26, 1896, for six thousand two hundred dollars,
with interest at seven per cent per annum from maturity,

and also as security for the payment of a balance of a thousand dollars owing on a note executed by Mary E. Pleasant to defendant, made January 15, 1895, with seven per cent interest from that date, and for the further payment of fifty dollars advanced by him at the sheriff's sale, with power to sell the property for the payment of said sums. The defendant is not interested in any controversy which may arise between the plaintiff and Mary E. Pleasant with respect to the ownership of the money which he received for the purpose of purchasing the property, nor in their respective rights in the land as against each other in case of redemption by either. Nor does it concern him whether the one or the other effects the redemption. He is entitled to hold the property until all the money secured thereby is paid. Both the plaintiff and Mary E. Pleasant, under the facts found, have an equitable interest in the land, and would be entitled to redeem, but neither of them could do so without the defendant's consent, except upon payment of the full amount due from both. Plaintiff is therefore, upon the facts as claimed by defendant, entitled to tender to him the full amount due, and receive from him a conveyance of the property. He did not see fit to ask in his answer to have Mary E. Pleasant made a party to the action, and it is not in accordance with our ideas of justice that the plaintiff should be denied any relief because of this failure on the part of the defendant. If Mary E. Pleasant does not choose to assert her rights to the property against the plaintiff, if any she have, that is her affair, and one with which the defendant had no concern. It appears from the record in this case that the property in question has been the subject of long and vexatious litigation. It is to the interest of the parties that the litigation should be ended. It is true that plaintiff asked for a greater measure of relief than she is entitled to, but the relief due her is of the same nature as that which she asked. Her interest in the land is, according to the facts found, a partial interest instead of the entire interest, as alleged, and the sum due the defendant is much larger than the fifty dollars alleged. But nevertheless she has an interest which entitles her to redeem on payment of the amounts found due, and the defendant holds the legal title, in trust, as alleged, although partly for her and partly for another. The relief is of the same character, and the

rights of the parties are of the same nature as alleged, though different in detail, and the court has power, under section. 580 of the Code of Civil Procedure, to award plaintiff such relief as the facts warrant.

The fact that defendant did not know of plaintiff's interest in the money furnished him by Mary E. Pleasant is not material.

Inasmuch as the plaintiff never tendered or offered to pay the sums found due, or made any attempt to do so, or to ascertain the same, before suit, she should not be allowed the relief here indicated except upon payment of the costs.

It should be added that the findings of the court in this action, that the money with which the defendant purchased the property in question was partly the money of Mary E. Pleasant and partly the money of the plaintiff, and upon other matters in issue, will not be binding upon the plaintiff in any litigation between her and Mary E. Pleasant concerning their interests in the property, or in the money advanced for the purchase thereof.

The evidence and findings in the case seem to cover all of the matters in issue between the parties before the court, and there is no necessity for a new trial. The judgment, however, should be modified in accordance with the views herein expressed.

It is therefore ordered that the cause be remanded, with directions to the court below to enter judgment declaring that the defendant holds the property as security for the sums set forth in the findings and conclusions of law, specifying particularly the amounts, with power to sell the same to pay the said sums of money, and that upon payment of the said sums, with interest due at the time of payment by the plaintiff to him, he shall execute a deed conveying to her the property, and that the defendant recover of plaintiff his costs, including his costs upon this appeal.

McFarland, J., Lorigan, J., and Henshaw, J., concurred.

ANGELLOTTI, J., concurring.—I concur in the judgment. To my mind it is entirely immaterial whether all or any portion of plaintiff's money was used by Mrs. Pleasant in the payment of her indebtedness to the estate of Bell, by reason of which the foreclosure decree held by the estate as

security for such indebtedness was transferred to Mrs. Gordon for Mrs. Pleasant in the year 1893, with the full knowledge of plaintiff. Findings of the court, fully sustained by the evidence, justify the conclusion that Mrs. Pleasant had the authority to authorize the taking by defendant at the sheriff's sale of the legal title as security for the payment of the notes of Mrs. Bell and herself, both of which were given for a valuable consideration. The court expressly found that it is not true "that any of said acts or proceedings were without the knowledge or consent of plaintiff," and the evidence shows very clearly that plaintiff had clothed Mrs. Pleasant with ostensible authority at least to do anything and everything she saw fit to do with relation to her money. The defendant apparently acted in the highest good faith throughout.

Plaintiff did not by this action seek a decree authorizing redemption. She claimed that defendant was a trustee, by reason of the source of the consideration. She failed utterly to establish to the satisfaction of the trial court the cause of action alleged. I am of the opinion that the judgment, under all the circumstances, was correct and should be affirmed. The defendant has, however, never claimed to hold the property except as security for the payment of the amounts due him from plaintiff and Mrs. Pleasant, and as this, with his costs, is secured to him by the modification of the judgment proposed, I concur in the judgment.

VAN DYKE, J., dissenting.—I dissent. I cannot agree with the majority opinion in this case. The findings are not supported by the evidence, and for that reason a new trial should be had, instead of merely remanding the cause with directions to the court below to enter judgment upon the findings as therein stated. The defendant was employed by the plaintiff in October, 1892, as her attorney and counsel, to advise her and act for her in relation to all her interests in the estate of her deceased husband, Thomas Bell. The court finds that defendant had no knowledge as to the amount of money which the plaintiff had placed in the hands of Mary E. Pleasant, her colored servant, prior to the commencement of this action, and had no knowledge that any of plaintiff's money had been deposited in the account and to the credit

of said Mary E. Pleasant with the Donohoe-Kelly Banking Company, or that said Mary E. Pleasant had in her possession money of the plaintiff for any purpose whatever, and that defendant did not know that any sum of money in the possession of Mary E. Pleasant was the property of the plaintiff, or that its possession had been intrusted to said Mary E. Pleasant by the plaintiff. The court also finds that said Mary E. Pleasant did not, on the twenty-third day of February, 1893, or at any other time, place in the hands of the defendant the sum of eleven thousand dollars of plaintiff's money or any of plaintiff's money above the sum of five thousand one hundred dollars, and that defendant did not receive said sum of eleven thousand dollars knowing it or any part of it to be the money of the plaintiff, and did not pay any money for or on account of the purchase of said judgment and decree of foreclosure or otherwise knowing it to be plaintiff's money.

These findings of the court in reference to the ownership of the money received by the defendant for and on account of the purchase of said judgment and decree of foreclosure and the want of knowledge of said defendant as to said ownership are not supported by the evidence. The Mary E. Pleasant spoken of was a colored woman who had resided with the plaintiff and her husband, Thomas Bell, for many years prior to the latter's death, and continued to reside with the plaintiff after Bell's death until January, 1899. She was familiarly called in the Bell family "Mammy," and was regarded with indulgence by the family, and she talked of the family affairs of her mistress as "hers" and "ours," and the defendant says: "I was employed by Mrs. Pleasant as the attorney of Mrs. Bell," and he states that in the first interview that he had with the plaintiff: "Mrs. Bell said that Mrs. Pleasant had complete charge of her affairs, that she was boss, that she herself understood nothing about business, never had transacted business in her life, and never knew anything of her affairs; that Mrs. Pleasant had always had charge of them as far back as she could recollect, that she was the only mother that she had ever known, and that she had always been a mother to her, and that she was the same as her child, and that everything was entirely in her hands, that whatever she had was Mrs. Pleasant's, and that whatever Mrs. Pleasant

CXLII. Cal.—5

had was hers, and that there never had been any distinction,
and that there was no use of trying to talk business with her,
that she would not know anything about it, did n't want to
know anything about it, that Mr. Bell had always kept her
like a child, and so had Mammy—she always called her
'Mammy,' except sometimes 'Mary Ellen'—and she did this
in response to a statement that I had made.'' It appears
from the evidence that all the moneys of plaintiff were in-
trusted to this colored woman as her servant, and were ad-
ministered by her without any kind of supervision. Her
position and powers seem to be of unusual and extreme trust
and confidence, as stated by the plaintiff herself to the de-
fendant. He says: ''She said I never need consult her under
any circumstances in regard to her business, but to consult
nobody but Mrs. Pleasant. . . . From that time on I never
did.'' Accordingly all the moneys received by the plaintiff
from the estate of her husband, and on policies on his life,
amounting during a period of three months following Novem-
ber 8, 1892, to the sum of $37,779.75, were paid to Mary
Pleasant, and the greater part of them were deposited by said
Mary Pleasant to her own account in the Donohoe-Kelly
Bank, from which they were drawn on her check from time
to time, as required for the use of the plaintiff or other pur-
poses. Her deposits during this period, together with the
balance of a small sum were, as shown by her bank account,
as follows:—

| | |
|---|---:|
| 1891—Feb. 28th (balance) ............$ | 38.00 |
| 1892—Nov. 28th ...................... | 8,767.25 |
| 1892—Nov. 29th ...................... | 5,000.00 |
| 1892—Dec. 9th ...................... | 632.15 |
| 1893—Jan. 5th ...................... | 800.00 |
| 1893—Jan. 6th ...................... | 10,012.50 |
| 1893—Jan. 14th ...................... | 6,000.00 |
| 1893—Jan. 23d ...................... | 1,000.00 |
| 1893—Feb. 23d ...................... | 5,900.00 |

Of these amounts, it is admitted that the items of Novem-
ber 28 and 29, 1892, and of January 6 and 14, 1893, were
moneys of the plaintiff—the last of said items (six thousand
dollars) being for family allowance for the three months
ending January 16, 1893. These include all the larger items,
excepting the last one, in the account. Some of the other

smaller items are unexplained. The thousand-dollar item of January 23, 1893, is perhaps a portion of the family allowance of two thousand dollars for the month ending February 16th, evidenced by receipt as follows:—

"SAN FRANCISCO, January 23, 1893. Received from Lucius L. Solomons Two Thousand & 00-100 Dollars in gold coin in payment of Mrs. Bell's allowance for month ending February 16, 1893. M. E. PLEASANT."

In regard to the last item of five thousand nine hundred dollars, it appears from the evidence that the defendant February 18, 1893, received from the executors for the plaintiff the sum of six thousand dollars, being her allowance for three months in advance, which he paid to Mary Pleasant, and took from her receipts as follows:—

"SAN FRANCISCO, February 21, 1893. Received from Lucius L. Solomons One Thousand & 00-100 Dollars in gold coin, leaving $5,000 still in his possession to be deposited in my bank. M. E. PLEASANT."

"SAN FRANCISCO, February 23, 1893. Received from Lucius L. Solomons Five Thousand & 00-100 Dollars, by check No. 690a, being balance of family allowance up to May 16, 1893. M. E. PLEASANT."

At that date the balance to her credit is found to be $13,522.21. Against this, on the next day, she gave to the defendant her check on the Donohoe-Kelly Bank for eleven thousand dollars, out of the proceeds of which the consideration for the assignment was paid. The amount so withdrawn, together with the sum of $2,515.50, paid on account of the plaintiff for assessments on mining stock owned by her, entirely exhausted the balance in the bank to the credit of Mary Pleasant, except the amount of $6.71. With regard to the alleged loan, there is no specific finding, but merely the general finding already referred to, that of the money represented by the check, five thousand nine hundred dollars was the money of Mary Pleasant, but there is no evidence to justify the finding of the ownership on her part of said money. The court, in fact, found that the Clark-Twitchell mortgage was held by the executors of Bell as security for the sum of $10,466. For this sum demand was made by the

·executors January, 1893, and the money not being paid, execution was issued on the judgment, and the property was noticed for sale February 24, 1893. Under these circumstances it was proposed by Mary Pleasant to purchase the mortgaged property at the sale, but she told defendant there was not enough money in bank to make the purchase. It was proposed to the plaintiff to obtain from the executors an advance of plaintiff's allowance for three months, and plaintiff consented. She had come with Mary Pleasant to the defendant's office to sign the vouchers, and defendant says: "I don't remember all the conversation, but Mrs. Pleasant announced that she and Mrs. Bell had come down in answer to my summons so that Mrs. Bell could sign the vouchers for the money, six thousand dollars we were going to get in advance, and that Mrs. Bell was going to let her have the necessary amount to make up the full sum necessary to pay the executors for this assignment. . . . I cannot remember the language that was used. Mrs. Pleasant said that she had spoken to Mrs. Bell in accordance with a previous conversation she had with me; that Mrs. Bell was willing to draw her family allowance in advance and to let Mrs. Pleasant have the three thousand five hundred dollars which I believe was the amount that she was short, in order to pay for the assignment of the judgment." From this, in connection with what was elsewhere said by the defendant, the meaning seems to be that the money was advanced to Mary Pleasant to supply the deficiency in her bank account. The remaining two thousand five hundred dollars of the amount was to be used, as the witness explains, in payment of plaintiff's indebtedness for assessments on her mining stock. The defendant himself did not understand that the money was to be advanced as a loan. "I did not so conclude at the time. . . . I suppose that is the legal effect of it. . . . I conclude now it was a loan or gift. . . . I did not pay any attention to the question of advance or anything of that sort, because I had been told by Mrs. Bell that what was hers was Mrs. Pleasant's and *vice versa.*" Hence, what was said by Mary Pleasant, assuming that it was thoroughly understood and assented to by plaintiff, is quite consistent with the theory that the purchase was to be made on account of the plaintiff. This is not only the presumption naturally arising from the relations of the

parties and the circumstances of the case, but such presumption is raised by law. In fact, any other construction of the conduct of the parties would not be consistent with the good faith required of one in Mary Pleasant's position, or with the presumptions raised by law with reference thereto. (Code Civ. Proc., sec. 1963, subds. 4, 19, 20, 28; Civ. Code, secs. 2219, 2224, 2231, 2235.) The evidence shows, and the court so found, that "at the time of the death of Thomas Bell said Mary E. Pleasant had on deposit to her credit in the said Donohoe-Kelly Bank, a balance of $33.08 only, and there is no evidence showing that afterwards she received, or had in her possession, or deposited in her bank, any money belonging to herself. It is clear, therefore, that the sum of five thousand nine hundred dollars, as well as the rest of the money used in the purchase of the judgment was the money of the plaintiff, and the property purchased also became hers. "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." (Civ. Code, sec. 853.) And the defendant, from his relations with the parties and the transactions, must have known this.

"If the party obtains knowledge or information of facts which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry if prosecuted with reasonable diligence would certainly lead to the discovery of a conflicting claim, then the inference that he acquired the information constituting actual notice is necessary and absolute." (2 Pomeroy's Equity Jurisprudence, sec. 597; *Lady Washington Con. Co.* v. *Wood,* 113 Cal. 482; *Duff* v. *Duff,* 71 Cal. 513.)

There is no apparent reason why this colored servant, without means, should seek to acquire the lot in question as her own property, and that either Bell in his lifetime or his widow, the plaintiff, should have loaned her the money for such purpose. But there is every reason why the Bells should desire the lot in question, as it adjoins the Bell homestead property, and all these circumstances must have been known to the defendant—in fact, he admitted he knew that property very well. Hence the unreasonableness—not to say absurdity—of the contention that the transaction was a *bona*

*fide* purchase by Mary E. Pleasant—the colored servant of
the Bell family—of the lot in question. She was in court as
a witness on the part of the plaintiff. Still the defendant
did not call her to substantiate his theory that the purchase
was for and on her account as her own property.

From the foregoing it is evident that the findings as to
the ownership of the funds that were used in the purchase of
the lot in the suit, and also as to the title to said lot, and as to
the want of knowledge of the defendant as to the right and
ownership of the plaintiff in the premises, are not supported
by the evidence.

But if, as found by the court, Mary E. Pleasant was a part
owner with the plaintiff in the property in litigation, she
should have been made a party to the action, but the defend-
ant, although contending with the finding of the court that
such is the case, raised no objection on that score, either by
demurrer or answer, and, therefore, as to him such an objec-
tion was waived. (Code Civ. Proc., sec. 434.) . "But when
a complete determination of the controversy cannot be had,
without the presence of other parties, the court must then
order them to be brought in, and to that end may order
amended and supplemental pleadings, or a cross-complaint
to be filed, and summons thereon to be issued and served."
(Code Civ. Proc., sec. 389.)

The defendant, it is to be noted, does not in his affirmative
defense, nor in his testimony, claim the absolute ownership of
the land in controversy. But his claim is, that he holds the
land in pursuance of an agreement with Mary E. Pleasant,
whereby he is to dispose of it and apply the proceeds to the
payment of the balance due on the two notes for six thousand
two hundred dollars and three thousand dollars respectively.
But it was not shown on this trial that Mary E. Pleasant had
authority, as agent of plaintiff or otherwise, to hypothecate
the land as security for the notes in question, or either of
them. If, however, on another trial it should turn out that
she did have such authority, and the notes were given under
circumstances which would make the consideration question-
able under the law relating to persons occupying confidential
relations, it would in such event be necessary to ascertain the
value of the services which enter into the consideration, and
thus arrive at the amount justly due to defendant in the

premises. The plaintiff, however, should not in any event be relegated to another suit to determine her right to the land as against the defendant or other parties, but, if necessary, such other parties should be brought in.

A rehearing was denied February 27, 1904, upon which the following opinion was rendered by the court:—

THE COURT.—The petition for rehearing is denied. It is not intended by the opinion herein to decide that the plaintiff, if she redeems the property, is not entitled to claim a credit for any rents which the defendant, Solomons, may have received during the time he has been in possession thereof, as an offset to the amount due upon the redemption.