[L. A. No. 2612. In Bank.—August 29, 1911.]

CARRIE F. SMITH, et al., Respondents, v. CUCAMONGA WATER COMPANY et al., Defendants. CUCAMONGA WATER COMPANY, Appellant.

WATER-RIGHT TO SPECIFIC QUANTITY OF WATER—DIFFERENT SOURCES OF SUPPLY—RIGHT TO SUPPLY FROM ANY SOURCE.—A grantee of the right to have his land supplied with a specific quantity of water originating from different sources of supply belonging to the grantor has no right to demand that the water actually furnished him should come from one or another source of supply, and his failure to so insist cannot.be construed as a waiver or abandonment of his right to a supply from another source covered by his grant should the source used for him prove inadequate.

ID.—ACTION TO DETERMINE RELATIVE RIGHTS—ABSENCE OF NECESSARY PARTIES—APPEAL—ORDER REFUSING NEW TRIAL.—In an action by various plaintiffs to have determined their respective rights, both as to quantity and priority, in certain water which the defendant had separately contracted to furnish them from the same source of supply, the objection that other persons, having similar rights to the water, were necessary parties to the action and had not been brought in, cannot be considered on an appeal from an order refusing to grant the defendant a new trial. Such defect was waived by the failure to set it up by demurrer or answer.

ID.—DUTY TO BRING IN NECESSARY PARTIES.—It was the duty of the defendant, in order to avoid being injuriously affected by a judgment establishing the rights of the parties before the court, to have called the court's attention to the absence of the other necessary parties and requested that they be brought in.

APPEAL from an order of the Superior Court of San Bernardino County refusing a new trial. J. S. Noyes, Judge presiding at trial. Benjamin F. Bledsoe, and Frank F. Oster, Judges refusing new trial.

The facts are stated in the opinion of the court.

Henry Goodcell, and F. A. Leonard, for Appellant.

J. W. McKinley, for Plaintiffs and Respondent.

C. C. Haskell, for Defendant and Respondent George D. Haven et al.

HENSHAW, J.—Plaintiffs brought this action against the Cucamonga Water Company and numerous other defendants, claiming rights to water owned or distributed by the Cucamonga Water Company, to determine plaintiffs' and defendants' respective rights to these waters, and to enjoin the defendants from interference with the plaintiffs' asserted rights. The defendants, severally or in groups, answered, setting up their respective rights and priorities. The court found the quantity of water to which each party plaintiff or defendant was entitled, fixed the relative priorities, and found that all the parties plaintiff and defendant were prior to the Cucamonga Water Company in their rights to the use of the allotted portions of the water. The defendant Cucamonga Water Company moved for a new trial upon the ground that the decision was not justified by the evidence and was against law. The motion was granted as to the defendant Jewett H. Cocke, administrator, and denied in all other respects. The defendant Cucamonga Water Company then appealed from this order, excepting that part of it granting its motion for a new trial against Cocke, administrator.

The water in controversy is that flowing in, found in, or developed in certain springs, streams, and tunnels upon the Cucamonga Ranch. The predecessor of all the parties in interest is I. W. Hellman, who formerly owned the ranch and all the waters or sources of waters thereon. Upon the ranch is a short chain of hills known as Red Hills, whose trend is in a northerly and southerly direction. The sources of the water supply are both upon the east and the west side of these hills. The Cucamonga Company and the Cucamonga Fruit Land Company succeeded to the rights of Hellman in some of the lands of the Cucamonga Ranch and in the Cucamonga Creek and the "springs on the Cucamonga Ranch, subject to one half of the waters of the east side belonging to the Cucamonga Vineyard Company and the Cucamonga Land & Irrigation Company." The right of the Cucamonga Vineyard Company and the Cucamonga Land & Irrigation Company to this reserved one half of the waters of the east side is not in controversy. The Cucamonga Company and the Cucamonga Fruit Land Company proceeded to sell to individual owners tracts and parcels of their lands of the Cucamonga Ranch, with appurtenant water-rights from the water supply of the Cuca-

monga Ranch which they had thus acquired from Hellman.
These companies thus in time sold 456.89 miner's inches of
water, and, speaking generally but with sufficient accuracy for
the purposes of this consideration, there became appurtenant
to each ten acres of land which they so sold, one miner's inch of
water.   The Cucamonga Fruit Land Company succeeded to all
the rights of the Cucamonga Company.   In time the Cucamonga
Fruit Land Company conveyed to this defendant, the Cuca-
monga Water Company, certain of its properties with accom-
panying rights and duties, all in subordination to and in full
recognition of the Fruit Land Company's duty to supply water
to the private owners, its grantees, and the grantees of its pre-
decessor in interest.   This deed recited that it was made in con-
sideration of "the better performance of the supplying and dis-
tributing of water hereby directed to be conveyed and the water
hereafter by the Cucamonga Fruit Land Company conveyed
to the said Cucamonga Water Company, and the better sup-
plying and distributing of the water to the following property :
First, 456.89 inches of water to be applied by grantee in satis-
faction of the following deeds and contracts heretofore made
by grantee to sundry parties, to wit :"   Then are set forth the
deeds to the land of the individual grantees with the quantity
of water to which these lands are entitled.   This deed con-
templated the further development of water by the Cuca-
monga Fruit Land Company and by the Cucamonga Water
Company, and contained an agreement by the former to con-
vey to the latter within twenty years "the right to develop
water on all lands on which the said 456.89 inches of water
are now being obtained, so far as the same now belong to said
Cucamonga Fruit Land Company, . . . and thereupon and
thereafter the said Cucamonga Fruit Land Company shall be
relieved from the duties and obligations in regard to the de-
velopment or supply of the said water, other than as stock-
holders of the Cucamonga Water Company."   As an added
consideration for this grant it is provided that the Cucamonga
Water Company is to convey certain of its stock to the Cuca-
monga Fruit Land Company, and it is understood that the
rights to water represented by that stock are subordinate to
the 456.89 inches referred to.   The Cucamonga Water Com-
pany accepted this deed, substituted itself for the Cucamonga
Fruit Land Company, as the purveyor and distributor of the

waters, undertook the performance of and became charged with the duty of supplying the water in accordance with the individual rights of the grantees. It also proceeded to do development work upon the west side to increase the water supply. · Similar development work had been done by the predecessor of the Cucamonga Water Company on both the east and west side. This development work consisted principally in the driving of tunnels to tap the secret and subterranean sources of the supply which showed in springs and cienegas and thus to increase the natural flow. The practice of the Water Company, speaking generally, was to supply the east side lands from waters of the east side springs, and the west side lands from waters of the west side springs. Of the east side waters it is to be remembered that one half of the supply was reserved to the Cucamonga Vineyard Company and the Cucamonga Land & Irrigation Company, and was not available for the purposes of the Cucamonga Water Company. Furthermore, a controversy had arisen between the Cucamonga Fruit Land Company and certain of the defendants represented by Mr. Waters (who may be designated as Mr. Waters's clients), which controversy was ended by a deed of settlement by which Mr. Waters's clients were given and took one inch of water to each eight acres of their land, this water to be taken from the east side source only. This settlement conveyed to Mr. Waters's clients 33.84 inches of water from the east side supply.

No difficulties arose between any of these parties while water remained abundant. A shortage occurred and the effects of it were first felt by those landowners who had been supplied from the east side sources. The Cucamonga Water Company, being entitled to the use of but one half of the east side supply, this half being diminished by the quantity specifically conveyed to Waters's clients, the time came when the others who drew from the east side supply were not given their *quantum* of water. Upon demand for it they they were told, in effect, that the Cucamonga Water Company recognized their rights as being limited to the east side supply, as against the contention of the landowners that they were entitled to their supply wherever and however developed from the springs of the Cucamonga Ranch, which springs included the west side springs with the water developed from them by the tunnels,

as well as the east side springs whose supply was inadequate.

These differences led to this action, and the principal question upon this appeal is that indicated; whether the individual grantees are entitled by virtue of their deeds to call upon the Cucamonga Water Company, the distributing agent, to supply them with water from the west side springs as well as the east side, or whether their right is limited to the east side water alone.

The court found in favor of the plaintiffs' contention, and the findings are abundantly supported. These findings award to the Cucamonga Vineyard Company and the Cucamonga Land & Irrigation Company certain waters above referred to, and over these findings there is no complaint. Also there is no complaint over the findings which award to the Waters's clients the 33.84 inches of water to be taken from the east side. The attack is on the findings awarding to the remaining consumers of water the water developed from the east or the west side. The testimony supporting these findings as to the individual claimants is substantially the same in each case. It may be illustrated by the case of the plaintiff Carrie F. Smith. The facts in this connection are that the Cucamonga Company conveyed to Lewis Smith, her predecessor in interest, lands "with the same proportion of water from the springs belonging to the company that his land bears to all the land which can reasonably be irrigated for tropical culture with said water." This *quantum* of water, here somewhat indefinitely expressed, is made certain by the agreement of the parties that it shall be one miner's inch of water for every ten acres of land. The springs belonging to the company are made certain by all of the instruments as being "the springs on the Cucamonga Ranch." The springs on the Cucamonga Ranch include the west side springs as well as the east side, and the springs on both sides were known as the Cucamonga springs. No word of evidence shows an abandonment by these landowners of any of the rights which their deeds gave them to the west side waters, and in some instances purchasers were told by the agent of the Cucamonga Company that the springs on the west side belonged to the Cucamonga Company and that the waters could be flumed over to the east side at any time they were needed. Throughout the whole case it is apparent that while, ordinarily, the east side users were supplied with water from

the east side springs there was no abandonment upon their part of a right to demand other water should the east side supply fail. And for this reason the contention of the appellants that the practical construction of the parties to these contracts— the practical construction of use—was such as to show an intent contrary to the findings and to estop the respondents from claiming the right to the use of the west side waters, is without substantial foundation. Of course the cases are numerous where an indefiniteness in term or description is made definite and binding upon the parties by the practical construction which they put upon it. Typical of this is the case quoted from by appellants, (*Jennison* v. *Walker*, 11 Gray (Mass.) 243). In that case an easement in land was granted in general terms without fixing its location. The right to the easement was exercised with the full consent and approval of the parties, and it was properly held that this selection so exercised fixed the location and description of the easement, since it was a practical construction put upon it. But that and the like cases are very different from the practical construction here sought to be upheld as defining the rights of the parties. Here was no exercise of any election by respondents. So long as they were being conveniently supplied with the water to which they were entitled they had no right to demand that it should come from one or another source of supply. And as they could not have insisted upon this, so their failure to insist cannot be construed as any waiver or abandonment of their right to a supply from another source covered by their grant should the source used for them prove inadequate. True it is that the contract and conveyance between the Cucamonga Fruit Land Company and the Cucamonga Water Company did not create new titles in these respondents, but it was a complete recognition upon the part of the Water Company of the rights and titles which actually existed, and it imposed upon the Water Company, substituted for the Fruit Land Company, the duty of supplying that water in accordance with the rights of respondents and the duty of using reasonable endeavor in the maintenance and development of the supply in the execution of its trust. We are not by this to be understood as saying that any given amount of development work was necessary to be done, but the development work when done must have resulted in one of two things, either in increasing

the natural supply of the springs and cienegas, or, by the tunnels intercepting the supplies of these springs and cienegas, in artificially increasing the supply at the sacrifice of the natural flow of the springs and cienegas. Either was legitimate development work, but the water thus obtained was always subject to the rights of the respondents, since it was work done in and about and concerning springs and cienegas of the ranch, to whose waters respondents were entitled.

Four hundred and fifty-six and eighty-nine hundredths inches is the amount of water which, under the deed of the Cucamonga Fruit Land Company to the Cucamonga Water Company, it is contemplated that the latter shall distribute to the private consumers. Of this water it is said that only eighty-six inches are represented by the parties litigant before the court, leaving three hundred and seventy inches unrepresented, and it is contended that the judgment fixing the priorities of the owners of this eighty-six inches amongst themselves and decreeing to them a priority over the defendant Water Company is not justified by the evidence and is injurious to the Water Company in this: that it is the duty of the Water Company to distribute this three hundred and seventy inches as well as the eighty-six, in accordance with the priorities fixed by the times and the sequences of the deeds, and that this judgment, while binding upon the Water Company, is not binding upon the owners of the unrepresented three hundred and seventy inches, who may be justly entitled to priority over the owners of the eighty-six inches, and that in obeying this judgment in injunction, it may, upon the other hand, subject itself to damage suits at the instance of these unrepresented owners. But to this the answer is that if the appellants' rights under this judgment could be injuriously affected by reason of the absence of other necessary parties, it was its duty appropriately to have called the court's attention to this fact, with a request that they be brought in. This it did not do. Moreover, the question which it raises is not one open to it upon an appeal such as this, from the order refusing to grant a new trial. There is no appeal from the judgment, under which alone this question if made properly to appear of record, could be reviewed. (*Great Western Co.* v. *Chambers,* 153 Cal. 307, [95 Pac. 151]; *Younger* v. *Moore,* 155 Cal. 767, [103 Pac. 221].) Not only is this question one that

cannot properly be raised upon motion for new trial, but the defect, if there be one, was waived by the failure to set it up by demurrer or answer, as held by *Ashton v. Zeila M. Co.*, 134 Cal. 408, [66 Pac. 494]; *Tingley* v. *Times-Mirror Co.*, 151 Cal. 1, [89 Pac. 1097]; and *Bell* v. *Solomon*, 142 Cal. 62, [75 Pac. 649]; Code of Civil Procedure, section 434.

The defendant corporation and its predecessors in interest are such corporations as are contemplated by section 552 of the Civil Code, and to the controversy here the case of *Hewitt* v. *San Jacinto Irrigation District*, 124 Cal. 188, [56 Pac. 893], is apposite.

The findings are sustained as to all of the respondents saving C. H. Babcock. He was not a party to the action. The judgment awarding him water necessarily falls, but this determination does not affect the rights of any of the other parties respondent, as to whom the order appealed from is affirmed.

Melvin, J., Angellotti, J., Lorigan, J., Shaw, J., and Sloss, J., concurred.